v. Flanigan, Davenport, and Henry v. City of Sandy Springs. Mr. Weber. Thank you, Your Honor. May it please the Court. My name is Jerry Weber, and I appear here today with Craig Goodmark and Carrie Wiggins. Your Honors, this appeal turns on the proper framing of due process rights to sexual intimacy. At one end of the spectrum, the Williams decisions frame the right too narrowly as a right to purchase and use sexual devices. At the other end of the spectrum, Sandy Springs now frames the right asserted as a, quote, unmoored sexual privacy right that will legalize prostitution and incest. Neither of these framings is correct. The proper framing here is very similar to that in the Warren case. An adult's ability to make consensual choices about intimate, noncommercial sexual activity. A framing that this Court in Williams 4 described as an overbroad framing. Obergefell clarified this due process right in the specific context of sexual intimacy and identified two errors with this Williams Court's decisions. First, Williams was faced with the Lawrence opinion, and Lawrence was silent as to Glucksberg. That silence led this Court to make one of two choices. Either follow Glucksberg, considering Lawrence a one-off, or consider the analysis in Lawrence and try to divine what the Court meant in Lawrence. How is Ms. Davenport prevented by the ordinance from purchasing and using sexual devices? Because the ordinance, by its terms, prevents her from doing that, and actually the allegations in the complaint are specific about her attempts to purchase and sell the devices and her inability to do so. In Sandy Springs, but not in the community where she lives? That is correct. But, Your Honor, none of the... She also alleges in the complaint, and I assume you drafted it, that she sells sexual devices. That is correct. So she gets them from somewhere, doesn't she? Yes, she does. So the ordinance doesn't prevent her from purchasing sexual devices, does it? It's an absolute bar on her purchase in Sandy Springs, and if Your Honor... Why does she have a right, living in Kennesaw, as she does, to purchase them in Sandy Springs? Because, Your Honor, the contraceptives cases, the marriage cases, have never said that there was a constitutional violation until you can go somewhere else. Well, but what you're talking about, Carrie, specifically, what Carrie said was that the supplier, the purchaser, the retail outlet in that case, could assert the rights of the user only if the law or ordinance imposed a substantial burden and reduced the number of outlets to a small fraction of what they otherwise would have been. Carrie was a New York law that had no geographic bounds within the state, applied throughout the state, and did reduce the number of outlets to a small fraction of what they would otherwise be. Sandy Springs is not a large fraction of anything, except Sandy Springs. So why does she have a constitutional right to purchase them in Sandy Springs when she doesn't even live there? Your Honor, for the same reason that if Sandy Springs had an ordinance prohibiting the sale of the American flag or prohibiting the sale of guns, one from outside that jurisdiction who attempted to go into that jurisdiction and purchase guns or purchase American flags would have a claim. And, Your Honor, we would point to, for example, the Shad case, which was an adult entertainment case, and the Supreme Court addressed that issue and said that the plea that a right may be exercised in some other place does not vitiate a constitutional violation. That's Shad 452 U.S. at 61. So no court has ever said a city ordinance that prohibits purchase is constitutional because it's otherwise unconstitutional, but somebody can go somewhere else. The reality is, in Williams itself— What she's alleging is a right to buy it from a brick-and-mortar store in a community she doesn't live. Suppose she alleged that she wanted to go to Anchorage, Alaska and buy one there, and Anchorage had an ordinance prohibiting it. Would she have standing? Would that be a justiciable controversy? Would that be a violation of her constitutional rights? If, in fact, she had gone there and was unable to purchase those devices, yes. But it doesn't really make sense. And if you look at Cary, which is the closest thing we have to asserting the rights of the end user by retail outlet, it says substantial burden on her right to purchase and use and a small fraction. And all she's got to do is click on Amazon, put the word vibrator in, and you get 14,000-plus hits on it. Your Honor, the reality is, in Williams itself, the plaintiffs had sexual devices. And this Court, in all of its Williams opinions, never suggested that the plaintiffs in those cases lost their right to challenge the sexual device ordinance because they already owned them. The reality is that any city prohibition on the sales of the American flag, on the sales of guns, whatever it may be, under that analysis, would be constitutional because somebody could get it somewhere else. And with the Internet, people can always get a device, a flag, a gun somewhere else. Exactly, but that doesn't mean that we have to shape the law to preserve a cause of action for you. If somebody can always get that which they have a constitutional right to possess and enjoy in the intimacy of their home, that doesn't mean that we've got to say you've got to be able to get it at a brick and mortar or you won't have a constitutional violation. Well, our allegations were very specific that our clients went to Sandy Springs. They were unable to purchase these devices. Our allegations were also very clear that our clients sought to sell the devices. Ms. Davenport's marriage, in her view, was saved by these devices, and so she provides them to others. She was unable to go to Sandy Springs because the law prohibited her from selling those devices in Sandy Springs. So we've alleged specific injuries arising out of this ordinance. And we've heard our allegations about that. Let me ask you a different question. The city of Sandy Springs, as I understand it, has repealed the ordinance 38120C. The plaintiffs no longer face any risk of prosecution. The consumers are free to buy and sell sexual devices within the city limits. Why is this case involved worthy at this time? Even assuming for the purposes of my question that it's justiciable on some theory of nominal damages, why is it in bonk worthy now that essentially you've gotten the relief that you've wanted? You can sell and buy what you wish in the city. Why should this court fuss with the matter in bonk now? Well, this court has held in Amnesty International and Slicker and Al-Amin that a nominal damages claim is a justiciable claim. Sometimes cases go all the way to the Supreme Court based on nominal damages availability. I'm not sure that I've made my question clear. Assume for the purposes of my question that nominal damages would lie and that the case is technically not moot. That is to say it's justiciable if only barely. Accepting that, why should this court as a matter of its discretion hear the matter in bonk now when essentially you've gotten all of the relief you want? You want to be able to buy and to sell without fear of prosecution in Sandy Springs. You can do that now. Why should we fuss with difficult questions of mootness, nominal damages, and the merits for $1 in nominal damages as in in bonk court? For two reasons. First, Your Honor, because our claim of nominal damages is a justiciable claim and is only justiciable if this court determines that the Williams line of authority is wrong. The ultimate issue, the reason why this court granted in bank review. It could be justiciable even if we decided that that line of authority, the holdings of that authority at least are right. But we have asserted in our prayers for relief a nominal damages claim. So if this court concludes. You keep coming back to justiciability. You're not answering his question. You say that it's only just, you said a moment ago, it's only justiciable if the Williams line is wrong. That's not true. It's justiciable whether it's right or wrong, right? That's correct. The only way that our clients can prevail on a claim of nominal damages. Maybe the better way to put it. The only way we can prevail on a claim of nominal damages. Mr. Webber, the thrust of my question, though, is assuming for the purposes of my question that you're right about nominal damages. I'm simply asking why this court in bank as a matter of discretion should take this case up now in this procedural posture. When you've gotten all of the relief that you want. Why we believe it is in bank worthy is because this is the case that gives this court the opportunity to resolve a circuit split. Resolve its case law and bring it in line with Supreme Court precedent. And provide our clients with the relief that they specifically sought in their prayer for relief. If we disembark this case, does the district court order remain in effect? The 11th Circuit decision was vacated, the panel decision, so the district court decision remains in effect. And the Williams line of cases will remain on the books and constitute 11th Circuit precedent? I mean, I guess my question is, is there a concern on the part of the plaintiffs that if we disembark this case and the case is over, that the city of Sandy Springs could reenact its ordinance? Yes, and that goes to the injunctive relief and voluntary cessation. Relying on the Williams line of cases? Yes, let me address that as to voluntary cessation. To this day, and in their briefs before this court, the Appalachee Sandy Springs has taken the position that this ordinance is constitutional. They have not wavered from that in their briefing whatsoever, and I venture to say they will not waver from that in their argument before this court. Their ordinance was repealed 11 years into litigation in this case, and only after this court granted in-bank. They filed a one-page motion to dismiss, not articulating anything more than that the ordinance had been repealed. Despite the fact, under this circuit's rules, they could have placed some evidence in the record to show that they weren't going to return to their old ways, that they did now think the statute was unconstitutional, that they were doing it for some reason other than that this court granted in-bank. Mr. Williams, can you bring me up to date on the city's litigation with fantastic visuals over this regulation? My understanding, well, this particular regulation, Mr. Wiggins represents Flanagan's, and so this portion of the broader litigation was sort of parceled out. And so Mr. Wiggins, on behalf of Flanagan's, has asserted the rights of Flanagan's as to this specific regulation. Now, there's a larger piece of litigation that's currently pending in this court that Flanagan's is involved in about many other issues of licensing, but that is not before this court, but it is before a panel of this court. All right, thank you. And, Your Honors, the third point on injunctive relief and voluntary cessation is that we have pointed to Code Section 2622 that remains in the Code of the City of Sandy Springs and also regulates sexual devices. 2622 regulates devices that are utilized for sexual devices that emulate, stimulate, or represent specific anatomical areas. So it's still being regulated elsewhere in the Sandy Springs Code. So the reality is that all of the triggers for voluntary cessation, despite the normal presumption when a government changes an ordinance, that there is not a moot controversy, are way against there being a finding of mootness. Has it ever been enforced? Has anybody ever had an action brought against them for this? Our clients have not been able to purchase the devices. They attempted to do so. I'm not asking about your clients. I'm asking if the ordinance has ever been enforced against anyone, if anyone has ever been cited for a violation of the ordinance. There were two pieces of litigation brought to enjoin the ordinance. Not what I'm asking, counsel. Has anyone ever been cited for a violation of this ordinance in the entire 11 years, you say, that it's been on the books? Not to my awareness, but that's because some stores have closed. There were stays issued at certain points in litigation. There was a whole lot happening in a series of litigations in state and federal court that precluded at certain points in time enforcement. Have sexual devices been sold inside the city limits of Sandy Springs in the last 11 years? Yes, and they're permitted to under the old ordinance because there were specific purposes for which they could be sold. We can determine all these facts at the pleading stage? Aren't those issues that are more appropriately addressed at summary judgment? It may be that those issues will need to be remanded. The questions about standing, the questions about governmental interest, all could be sent back to the trial court, but the trial court is unable to consider them unless this court revisits the Williams decisions. All right. Thank you, counsel. Thank you. Mr. Berkow. May it please the court. Scott Berkow on behalf of the city of Sandy Springs. We ask this court to dismiss this appeal as moot and in the alternative to affirm the judgment below. This case is obviously moot. Legislative repeal renders a challenge to the repeal statute moot. This court has said that time and time again. Is code section 38-120C unconstitutional? No, absolutely not. It was based on a case law that had been upheld, a Georgia statute actually, that had been upheld by the United States Supreme Court in 1978 in Sewell versus Georgia, which is a case that the court took jurisdiction under their old statute for jurisdiction and then dismissed it for want of a substantial federal question. It was not only procedural due process, not only due process claims, but also First Amendment claims. Just so I understand the history of this, as I understand it, Sandy Springs was incorporated December 1, 2005? Correct. And this ordinance has been on the books ever since then? Since the beginning. They've had some version of this ordinance. It was basically an analog to the Georgia state statute that was on the books for 30 years and upheld many times. But there was a 2002 opinion of this court in a case called this, that, and the other tobacco versus Cobb County that had preliminarily enjoined the state statute because of an advertising ban. So when the city adopted this ordinance, they basically adopted what the state had minus the advertising ban that this court had found unconstitutional. But the Williams cases were the precedent of this court when they adopted it. I had one more. I looked at the docket this morning, and so it looked like to me the en banc notice issued from this court on March 21 of this year. And that's the same day that the Sandy Springs repeal Subsection C of the ordinance. I'm not sure if it was the same day. It may have been a few days after, but that's the whole point. Mr. Weber's pointing to another provision of the code for regulating and affirmatively licensing adult bookstores. The definition of adult bookstore in this separate zoning ordinance in the other Flanagan's case looks at an adult bookstore or defines it by reference to printed adult material and then also these sexual devices. In other words, the fact that there's another portion of the city's code that affirmatively licenses and allows bookstores with sexual devices proves that the Sandy ordinance that prohibited the commercial distribution of obscene devices was just an inconsistency in the city's code. And they have another means of controlling the adverse secondary effects that they targeted in this ordinance with that separate ordinance. So Subsection C, which has now been repealed, does Sandy Springs now concede the unconstitutionality of that section? Do you concede that that section is unconstitutional now? Of course not, Your Honor, but that's not the point. There's no intent to reenact it. Why is the answer of course not? Well, because the court would have to divine what the rationale for the city of Sandy Springs is in adopting the ordinance. Well, actually, why do we have to divine it? You all said what it was. You issued cases. You issued a statement complete with case citations, reasons for why this was being adopted. But curiously, when you revoked it, there's no statement or explanation whatsoever as to why you did it. And the interesting thing is that in 11th Circuit jurisprudence, we have Harrell v. The Florida Bar, National Advertising Company v. City of Fort Lauderdale, Rich V. Secretary of Florida Department of Corrections. All of these cases pointed to, in particular, two factors. One is the timing of when a challenged regulation or statute was revoked. And the other is the content of why it was revoked. And these cases, all of them found that the voluntary cessation doctrine did not apply because it was too little too late. And here, this is the most egregious of all three of these cases, as far as I can tell, of all four of them, if we include this one. So my question to you is, first of all, why did it take, you know, literally years to decide to do this? You went through the district court. You went through two rounds of briefing before the panel because Oprah Geffel came out in the middle. Then you received the panel opinion in August of 2016 with the explanation that perhaps there might be some problems with Williams. And you still waited until after we unbonked the case to revoke the statute. And you gave no explanation as to why you did it. I mean, that is troubling. It feels like maybe you're trying to game the system a little bit. Your Honor, that's absolutely not true. And I would disagree with Your Honor about the case law in the 11th Circuit. It's clear that those situations of voluntary cessation involve a particular practice. But when they're so weighty of a legislative act of repealing an ordinance, the case law from DA Mortgage v. Miami Beach and the National Advertising v. City of Miami case show that you don't guesswork as to the motive behind it. What about our Tanner decision, an en banc opinion of this court where it was a municipal ordinance just before the en banc decision that repealed the ordinance? And we said that it was moot. Isn't that right? Yeah. We have a dozen signed cases in this ordinance. And the Tanner Advertising v. Fayette County case is directly on point. When it's a legislative repeal, the presumption is that the government will not reenact the law. And the burden is on the challengers to provide affirmative evidence in the record that that's not true. But more importantly, Judge Rosenbaum. It is troubling, though, that fine, if you don't want to concede that it's unconstitutional, at least concede that there are questions about its continuing constitutionality. Because if you don't and you have no explanation as to why you revoked it and you did it so late in the game after literally years and years of defending this statute, why isn't the presumption rebutted that perhaps that you do intend to re-invoke it at some later point in time? I mean, we've said that. No matter what else we may have said in other cases, we have lots of jurisprudence where we have said exactly that same thing, that if you do that in those other cases, that that rebuts the presumption of voluntary cessation. Your Honor, I think from the Supreme Court, Aladdin's Castle v. City of Mesquite, that's not the case. When there's a legislative repeal, I could supply a resolution from the Sandy Springs City Council in a week that says we really, really meant it when we repealed the law. But they authorized me in the motion. No, that's not the point. I mean, that's not what we look to. What we look to is an explanation of why you are revoking it. That's what we look to. That's one of the things we look to. We don't look for you to say we really, really meant it. We look for you to say, you know, we've been through all these years of litigation, and we've discovered that maybe there might be some constitutionality questions about it, we have concerns, those types of things. Those types of things that would indicate that it's not reasonable to be concerned anymore, that you might re-invoke the statute. Your Honor, the law had never been enforced, and that's what was extant at the time that they adopted it. Maybe they didn't want to proceed with litigation over an ordinance that was the interest of addressing secondary effects was addressed in another law that had been upheld as constitutional in zoning that they knew they were going to stay committed to. So, you have two incongruent portions of the city code. One bans the commercial distribution of sections. So, how difficult would it be to say that? That's the reason why. Okay. We said that in our brief. We said that in our motion papers. That's not in the revoking. But when the city authorized me to file the motion to dismiss this appeal as moved based on the legislative repeal of this ordinance, they authorized me to say the city disavows any intent to reenactment. And that's what courts rely on all the time to determine justiciability. What do we do if the city changes its mind? Elections happen. And the new council, I assume you have a council, comes in and says, darn, that was a great ordinance and never been struck down. And they reenact it. What do we do? Well, at that point, we can't do anything. We can't do anything if we dismiss the appeal. What happens then? Well, they could go doing what they didn't do in this case. And that is allege specific facts of actual purchases. No, no. They want to bring this very lawsuit again. And they file the second amended complaint with intervenors. Maybe this time they get somebody who lives in Sandy Springs who wants to buy these devices and feels frustrated. And then they bring the case again. And then we start all over. And we're running out of Roman numerals on the Williams case. So we've got this new name. We can start over on it and build up to five or six. Your Honor, I think the fanciful nature of your question shows why it's such a remote possibility. I didn't think it was fanciful. I thought it was probing and well reasoned. Your Honor, perhaps it's that too. But the reality is it relies on a whole bunch of hypotheticals that are barred by the standing argument. But the fact is if Sandy Springs wanted to reenact the ordinance next month, it could. It's free to do that, isn't it? Wouldn't be in contempt. That's true. The city has – we're looking at the facts of the legislative repeal that has followed. No, no, no. I'm not talking about that. I assume this case has gone away. I mean you could come back. There's nothing stopping Sandy Springs from reenacting the ordinance. Well, there is. Is there? What is it? There is. There's the representation of the city in a court of law that they're not going to reenact it. And the court said we have ways of dealing with flip-flopping. Hold on one second. Where is that representation in the record? In the motion to dismiss, page one. That's your statement on behalf of a client. That's not the word of a legislature or a city council. There's tons of law saying that what lawyers say in papers don't substitute for the statements or evidence coming from their counsel's mouths. Whether it leads to a finding of mootness or not, there is nothing in this record from Sandy Springs itself about why the repeal took place. Is that correct? Well, other than the representations of counsel and the ordinance itself. Right. There's nothing else. Right. There's no reason. Let me turn to the second side of the mootness issue if I could with you. Yes. Tell me why you believe that a claim for nominal damages will not lie in a substantive due process case when it does in a procedural due process case, in a First Amendment case, in a Fourth Amendment case. Because this court has explicitly said so. But we're sitting on bunk. The reason is that the recognition of the nominal damages claim under 1983 and when a legislative repeal will not save a case from the mootness determination. I'm not talking mootness now. Before you even get to whether or not nominal damages saves a case from mootness, you've got to figure out whether or not nominal damages will lie. That's right. I'm at the first question, not the second one. Got it. So tell me why you believe, mootness aside, nominal damages will not lie in a substantive due process case. Because under the Supreme Court's decision in Carey v. Piffus, which this court followed in DA Mortgage v. Miami Beach, nominal damages are only for violation of certain, quote, unquote, absolute rights. And why is substantive due process, as interpreted by the Supreme Court, not an absolute right when procedural due process is? In both scenarios, there's a huge amount of line drawing. Just because you say there's a right to procedural due process doesn't tell you what process is due and when it's due. And just because you say there's a right to substantive due process doesn't tell you when the government crosses that impermissible line. So tell me why there's a hierarchy of rights that allows nominal damages for some violations but not others. Because one is rooted in the Constitution and the other ones are judicially created. The problem you've got with that is that the Supreme Court says otherwise. But the Supreme Court said that. And we are stuck with Supreme Court precedent, whether you like it or not. True. And there are substantive due process cases from the Supreme Court recognizing that at some core there are some things that government cannot do. Although there is no substantive due process right expressly stated in the Constitution. So given that reality, how do you create a hierarchy of rights that allows recognition of nominal damages for some violations but not others? Well, in this case, it's not an explicit or absolute right from the Supreme Court. Why not? Well, first of all, it's never been announced. And that's what this court said in Williams IV in reading it. You're saying structurally why is a substantive due process claim, even one recognized by the Supreme Court, not the type of claim where nominal damages will lie? No, I'm asking you why. I thought part of your argument is that nominal damages do not exist for a substantive due process claim. Isn't that part of your argument? I'm asking you to justify that argument. How do you distinguish between rights? How do you say one right gets nominal damages but another one doesn't? We're going to think that a Second Amendment right is not important. We're going to think that a Fourth Amendment right is important. You get them for this right, but you don't get them for that right. I'd like you to give me a principled reason as to how we can distinguish among rights in terms of the award of nominal damages. That is because those rights in the Fourth Amendment, those rights in the Second Amendment, those rights in the First Amendment exist, and they're not created by judges during the litigation based on penumbras and emanations that flow from only inferences that are not in the constitutional text. The Supreme Court has strayed from text a lot over its history, and we're bound to follow those pathways that the Supreme Court has created whether or not we think they're grounded in text. The Eleventh Amendment is one example that comes to mind. We're not free to say, you know what, the Eleventh Amendment doesn't say what you say it says, so we're really not going to follow it this time around. We think you got it wrong in Honduras, Louisiana, many moons ago. So you're sort of stuck with what the Supreme Court has given us as a framework, and I want to know within that framework, what test do we use for saying that one right gets nominal damages and another one doesn't? The test that the Supreme Court's given on what's an absolute right and what's not. Well, what's an absolute right? The one's procedural due process, like this Constitution. Why is that absolute? Why is that absolute? Because it's spelled out in the Constitution. Well, that means it's textual, not that it's absolute. Let me address this with Poe v. Ullman. Let's say you're wrong about that. Yes. Okay. Is there going to be a prospective nominal damages claim? No, and that's another thing this Court has already held. You can't have a prospective nominal damages claim under 1983. Look at Poe v. Ullman, which the Bergefell decision, which I know we're not talking about today, is addressing. Four times they cite Justice Harlan's dissent, which is sort of the fountainhead of this procedural or this substantive due process doctrine. But the holding of Poe v. Ullman is that a contraception statute that had been on the book for 80 years in Connecticut was not justiciable because there was no immediate threat of enforcement. It was still on the books. It wasn't even repealed. And the opinion of the Court dismissing the case for lack of justiciability was grounded in the fact that we don't engage in debating societies when there's not an immediate threat of enforcement. How would the plaintiffs in this case be compensated for their inability to purchase these devices over the past couple of years? That's the last defect in their complaint. The city never enforced it once. Insurrection sold the devices. Ms. Davenport and Kennesaw and Mr. Henry and Atlantic used devices throughout the entirety of the litigation. We can make that determination from the pleadings alone? Yes, because all they said, their pleadings are insufficient under Twombly and Iqbal. They had nothing more than naked assertions without further factual enhancement. They make the allegation in their complaint that they sought to obtain, to purchase these devices, and they were unable to do so. And that's what we're faced with. Yes, but that's a conclusory allegation that's quote-unquote merely consistent with the defendant's liability. But under Iqbal and Twombly, those are insufficient. How can that be conclusory? If you say you were denied the right to purchase something, now that may be constitutionally insufficient on the merits. But how can you say that that's a conclusory allegation for purposes of Twombly? Because there's no who. Who's the person they tried to sell it to? There's no what. What device did they try to sell? There's no where. This is not fraud pleading under Rule 9 that needs a who, what, when, where, why. You can't have a conclusory allegation unadored by actual facts like the who, what, where, when, and how. How were they prevented? Look at the allegation itself. If you have an ordinance on the books that prohibits it, flatly prohibits it, and you say you weren't able to buy it, if you link up one and two, you think that's conclusory? Respectfully, Judge Jordan, the district court held the opposite, that both these interveners could purchase these devices. I'm not talking about what the district court held. I'm talking about the sufficiency of the complaint. Well, but look at the ordinance as to the sufficiency of the complaint. It explicitly excluded medical uses. Ms. Davenport could go purchase it. The artwork that Mr. Henry wants to do is not covered. So Judge Murphy did an excellent job of parsing out their various claims under the allegation of the complaint. Counsel, you say on page 9 of your brief, en banc brief, that insurrection openly admits that it purchases and sells sexual devices. That's correct. You cite Appellate's brief at 12, but it's not on page 12 of the en banc brief or anywhere in the en banc brief. Your Honor, I think in another portion of the brief or maybe on that page, we also cite to the district court's opinion in the companion case. I'm not talking about the district court's opinion. I'm talking about a concession they make. You cite specifically Appellate's brief at 12. I've worn out that page reading it in the page before and the page after it, and there's no such concession there. Well, in the complaint, they allege that they sell these sexual devices. They don't allege that they've stopped selling them. So you mean the complaint at 12? Probably. I apologize, Your Honor, for the typo. But the reality is this is just like Poe v. Ullman because in that case, the Connecticut attorney general came in and said, these contraceptives have been openly and notoriously sold in drugstores throughout the state. That was another reason why the court said it's not justiciable, it should be dismissed. Before you sit down, let me take you back to the initial questions that you were asked. And you indicated that Sandy Springs does not concede the unconstitutionality of subsection C of the ordinance, that part of the ordinance that was repealed. And I'm still having, I still don't know if that's the case. Why was that section repealed? Why was the ordinance repealed if it's not for the purpose of avoiding an adverse result from this court? Perhaps they didn't want to be known in the media as a city that bans sexual devices. Perhaps they dealt with their other code section that adequately regulates the zoning and location and affirmatively licenses stores that sell these devices. I understand, though, that one of the factors that we take into consideration in determining whether or not the case is moot is whether or not the repeal of the ordinance is for the purpose of avoiding an adverse result from the court. Your Honor, I can unequivocally say that the city is not going to reenact the ordinance. And the reason that they dismissed it under the national advertising versus Miami case is not something that the court speculates as to the motive. And Atlanta's CASA from the Supreme Court again says they bear the burden of proof to show affirmative evidence of reenactment. So the reason that they repeal the ordinance is because Sandy Springs does not want to be known as a municipality that bans the sale of sexual devices? It could be that or it could be their other code section. But I want to say one last thing. They added something in the record in their reply brief about photographs and everything. That's A, improper and B, it just shows that they didn't have a sufficient pleading alleging specific facts. That's inconsistent with the argument that you're making in your brief that the ordinance is for the purpose of promoting public morality and avoiding the secondary effects from the proliferation of sex toy stores in the community. The ordinance did say that, but that's the whole point. The city repealed the ordinance. And the fact that they had a provision that we still, because the court kept the en banc proceeding scheduled for today, had to defend the merits of the ordinance doesn't negate the mootness of the legislative repeal. Thank you, Your Honor. Thank you. Mr. Weber, five minutes. Your Honor, in one sentence, in a one-page brief, 11 years into this litigation, counsel said that the city disavowed any intent to revisit this ordinance. Well, counsel, come on. And statements of counsel, Your Honor. Counsel speaks for the client. Does counsel not? No. ACLU v. Florida Bar says that statements of counsel are not evidence for purposes of standing and mootness. We're talking about evidence. If counsel makes a stipulation or an agreement, we bind the client with it. Just legal process 101. I would say that ACLU v. Florida Bar is definitive, as are many decisions of this court, that a statement of counsel in argument or in brief is not a statement of the governmental entity. It is not a statement of the governmental entity. We have held governmental entities to statements of counsel countless times. You can't function in a legal system, an adversary litigation system, if you can't rely on the statements of a counsel to bind his client. You just can't. In ACLU v. Florida Bar, the statement was in a voluntary cessation context, and it was a statement in a brief. So we would rely on that decision. Moreover— What was the statement? I'm just curious. It was a statement disavowing—if I remember right, it was a statement disavowing an intent to reenact, but I could be wrong about that. Is there any realistic risk here in your mind that the city is going to reenact this? What we know is that several cities near Sandy Springs have identical ordinances. Those were cited in the amicus brief. What we know is that the city of Sandy Springs has been fighting this doggedly for 11 years, and they have not to this day conceded the constitutionality, unconstitutionality of the ordinance. And therefore, you believe there is a realistic risk that if this case finally went away, they would reenact this ordinance? We do believe that that is a possibility, and it is not absolutely clear—that's the laid law standard— that's the standard of laid law. It is not absolutely clear, especially in light of the— In the voluntary cessation cases, we have said that the burden on you is more demanding every night when it involves a legislative repeal. That is correct. There is a presumption, but still the laid law standard applies and analyzes— It's a case where we found that the—where we went so far as to determine by looking behind the repeal that the case was no longer moved. I would point, for example, to the Yeager case, to the Church of Scientology case. There was a legislative repeal, and we found that it was nevertheless not moved. Yeah. The Yeager case involved a school board's repeal. Why did we think that those were cases that were still justiciable, whereas, for example, Tanner, the signed ordinance case, that was an en banc case, repealed while the case was pending en banc, was not? What have we said were the relevant factors? This Court looked at the four factors in voluntary cessation. First, does the governmental entity still contest the constitutionality? Here they do. Was the change done in response to litigation? Here, 11 years into litigation, on the very day that en banc is granted, or a day after, the city repealed. Third, is there evidence that they would not return to their old race? At this point, we've only got a one-sentence statement of counsel. We don't even have an affidavit that they were— Let me ask you a question about that. Does this record reflect that, notwithstanding the ordinance being on the books, it wasn't, in fact, enforced, and the defendants were able and, in fact, did sell their product? I just want to know, is it a matter of record? There's nothing in the record about that. And what I will say is that the ordinance did permit them to sell these devices for certain purposes, certain very limited purposes. What I will say, and it's a matter of notice, there are a series of litigations in state and federal court that involved the constitutionality of these ordinances and the broader scheme. So that was in existence. No, I understand that about the broader scheme. My question is just more precisely focused on the sale of these products. Were they selling them? Was the ordinance enforced during the course of this litigation? Or is the answer you cannot tell from this record? From this record, what you can tell is that our clients went to a store. There were stores other than Flanagan's that weren't subject to this so-called agreement. They were unable to purchase those devices because the store owners did not want to face criminal prosecution in selling those to them because the ordinance is not a prohibition on purchase. It is a prohibition on sale. It's a criminal ordinance, and they're subjected to potential criminal prosecution. So our clients went there. There were signs that said you cannot purchase. And they went and attempted to purchase, and they were unable to do so. And this Court, addressing the nominal damages question, has been very clear in Amnesty International and SLCR. We have unambiguously held that a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he has suffered no compensable injury. That Al-Amin, Amnesty International, all those cases stand for that proposition. Yes, there is one decision from this circuit that appears to limit that to procedural due process context, but that's contradicted by all the other decisions of this Court. And thank you so much for this in-bank review, and we appreciate your time. We appreciate the arguments of counsel on both sides. We'll take that case under submission. All rise. Thank you.